# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**JOSE J. ESCALONA MATOS**,

*Petitioner*,

v.

**JOHN TSOUKARIS**, *et al.*,

*Respondents*.

No. 26-cv-09763

**ORDER**

---

**THIS MATTER** comes before the Court by way of a Petition for Writ of Habeas Corpus, (ECF No. 1), and the Court's Self-Executing Order directing Respondents to identify, among other things, the specific statutory or other legal authority for Petitioner's detention; the procedural due process afforded prior to detention; whether a final order of removal exists; any alleged changed circumstances justifying detention; whether Petitioner has received a bond hearing; and the current status of all related immigration proceedings, (ECF No. 3); and

**WHEREAS**, Petitioner is a native and citizen of Venezuela who entered the United States on or about March 17, 2022. (Pet., ECF No. 1 at ¶¶ 1–2). He was later encountered by immigration officials near the southern border, and issued a Notice to Appear and released on his own recognizance. (Resp. Ex. B, ECF No. 5-2 at 3). On July 26, 2022, Petitioner was arrested by local law enforcement officers in Lakewood, New Jersey on the charge of domestic violence – simple assault ("DV Arrest"). (Resp. Ex. C, ECF No. 5-3 at 5). The status of the DV Arrest is unclear. (*See id.* (indicating the charge was "sent to family court"); Resp. Ex. D, ECF No. 5-4 at 4 (same); Resp. Ex. E, ECF No. 5-5 at 3 (indicating the charge "is currently pending" as of December 4, 2025)). On October 3, 2024, Petitioner applied for, and was later granted, Temporary Protected Status ("TPS"). (Resp. Ex. D, ECF No. 5-4 at 3). His TPS was terminated on November 21, 2025

(*Id.*). Following the termination of his TPS status, Petitioner was arrested again on December 4, 2025, by local law enforcement officers in Old Bridge, New Jersey on the charge of contempt, which remains pending ("Contempt Arrest"). (Ex. D, ECF No. 5-4 at 4). On July 27, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner at a scheduled check-in. (*Id.* at 3–4; Pet., ECF No. 1 at ¶ 3). Petitioner is currently detained at Delaney Hall Detention Facility in Newark, New Jersey. (Pet., ECF No. 1 at ¶ 1). He claims he is unlawfully detained pursuant to 8 U.S.C. § 1225(b)(2). (*Id.* ¶ 6); and

**WHEREAS**, Respondents filed an Answer and letter response on August 5, 2026. (ECF No. 5). In their response, Respondents acknowledge that Petitioner is detained under 8 U.S.C. § 1225(b)(2) and has not received a bond hearing. (*Id.* at 1–2). Respondents further acknowledge that the statutory arguments and material facts presented here are substantially identical to those this Court rejected in *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397 (D.N.J. 2025), and other cases. (Resp., ECF No. 5 at 3). That position has also now been persuasively rejected by several federal courts of appeals. [1] *See Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); and

**WHEREAS**, it appears to the Court, at a minimum, that Petitioner is being unlawfully detained under Respondents' repeated invocation of 8 U.S.C. § 1225 because, as set forth in *Bethancourt Soto*, Petitioner was apprehended inside the United States after residing here for an

---

[1] The Court is aware of the decisions of the Fifth and Eighth Circuits reaching a contrary conclusion. Those decisions are not binding here, and the Court is unpersuaded by their reasoning, for many of the reasons cogently set forth in the dissents, which explain that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

extended period, and therefore he should have been detained under 8 U.S.C. § 1226,[2] which requires an opportunity to seek bond; and

**WHEREAS**, the basis for the Petitioner's continued "detention [was] blatantly unlawful from the start, [so] the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate[ly] release him and enjoin the Government from further similar transgressions," *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 366, 371–73 (S.D.N.Y. 2019) ("[T]he Supreme Court has repeatedly upheld prisoners' rights to challenge the constitutionality of their detentions, and allow[ed] courts to implement corrective remedies, regardless of whether there were other bases for the petitioners to be subsequently detained."); and

**WHEREAS**, the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, *post hoc* justifications presented during litigation, as doing so would give the Government a free pass to violate a person's statutory and constitutional rights

---

[2] Respondents cite Petitioner's DV Arrest and Contempt Arrest as the reason ICE detained him on July 27, 2026, yet do not contend that either arrest subjects him to mandatory detention under, for instance, 8 U.S.C. § 1226(c). The Court will not make that argument on Respondents' behalf and cannot grant relief on a statutory basis they have not invoked. In any event, the circumstances of the arrests and Respondents' passing reference to them indicate to the Court that Respondents do not find the arrests sufficient to warrant mandatory detention under any applicable statutory provision. For instance, the DV Arrest occurred well before Petitioner was granted TPS, suggesting that Respondents did not then consider it an impediment to his remaining in this country, and do not now rely upon it as sufficient to require mandatory detention. As for the Contempt Arrest, Respondents provide no supporting documentation beyond internal DHS records, which offer little context and no factual information as to the nature of the charge. (*See* Resp. Ex. E, ECF No. 5-5). Thus, although Respondents purport to rely on Petitioner's "criminal history" to explain why ICE detained him, they do not now argue that this history legally requires his mandatory detention. Nor do Respondents argue he is a danger to the community or flight risk.

first and search for authority later;[3] and

**WHEREAS**, in any event, the Government does not allege that Petitioner is a flight risk, a danger to the community, or any other basis for denying bond and has "failed utterly to articulate a legitimate interest in the Petitioner being detained." *Elias v. Knight*, 817 F. Supp. 3d 970, 986 (D. Idaho Nov. 19, 2025); and

**IT IS,** on this 7th day of August, 2026,

**ORDERED** that Petitioner's § 2241 Petition is **GRANTED**; Respondents shall **on this date IMMEDIATELY RELEASE** Petitioner under the same conditions, if any, that existed prior to his detention, including, but not limited to, release: (1) in the State of New Jersey, if Petitioner was initially arrested in New Jersey, or else as close to the place of initial arrest as reasonably practicable within 24 hours; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking devices); and (3) with all clothing and outerwear worn at the time of initial arrest, or other appropriate attire; and it is further

**ORDERED** that Respondents shall return to Petitioner all personal property belonging to Petitioner—including, but not limited to, any driver's license, passport, immigration documents, currency, or cellphone—that was seized at the time of initial arrest and that is currently in their

---

[3] *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted *post-hoc*, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court "cannot credit Respondents' new position as to the basis for . . . detention, which was adopted *post hoc* and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing the impropriety of allowing the government to proceed on "*post hoc* justifications for detention"); *cf. Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process . . . not a *post hoc* rationalization, or agency counsel's in-court reasoning.").

custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's arrest; and it is further

**ORDERED** that Respondents shall file a letter on the docket confirming the date, time, and location of Petitioner's release and certifying that the conditions set forth above have been satisfied; and it is further

**ORDERED** that Respondents are **PERMANENTLY ENJOINED** from rearresting or otherwise detaining Petitioner under § 1225, which this Court has found inapplicable to him; and it is further

**ORDERED** that Respondents shall not arrest, detain, or otherwise take Petitioner into custody under 8 U.S.C. § 1226 for a period of fourteen (14) days following his release, so as to ensure full effectuation of this Court's judgment and to prevent circumvention of the relief granted; and

**ORDERED** that any future detention of Petitioner must comply with all statutory and constitutional requirements, including the identification of a lawful statutory basis for detention and the provision of adequate procedural and substantive due process; and it is further

**ORDERED** that, to the extent that Respondents seek to re-arrest or otherwise re-detain Petitioner under any statutory authority, including but not limited to §§ 1225 or 1226, this Court shall retain jurisdiction over the matter and Petitioner may move to reopen these proceedings before this Court without the need to file a new habeas petition; and it is further

**ORDERED** that Petitioner shall advise the Court if he intends to file any application for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, within fourteen (14) days of the entry of this Order. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418

(3d Cir. 2026); and it is finally

      **ORDERED** that the Clerk of the Court shall **CLOSE** this case.


                                            **CHRISTINE P. O'HEARN**
                                            **United States District Judge**